UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AMERICAN NEWS & INFORMATION SVCS., :
INC., ET AL., :
 :
    Plaintiffs, :
 :
v. : CASE NO. 3:15cv1209(RNC)
 :
JAMES C. ROVELLA, ET AL., :
 :
    Defendants. :

## RULING ON PENDING MOTIONS

Plaintiffs, American News & Information Services, Inc. ("American News") and Edward Peruta ("Peruta"), bring this civil rights action against several Hartford police officers[1] alleging violations of plaintiffs' First and Fourteenth Amendment rights, 42 U.S.C. §§ 1983, 1988 and the Connecticut Constitution, Art. I, §§ 4, 5. In particular, plaintiffs allege that on September 12, 2014 and August 7, 2015, Hartford police officers (1) prevented Peruta "from videotaping and photographing police officers in public" in the vicinity of 519 Park Street and 38

---

[1] The defendants are Chief of Police James C. Rovella, Lieutenant Michael Coates, Lieutenant Brandon J. O'Brien, Sergeant Sean Spell and Deputy Chief of Police Brian J. Foley, all in their individual and official capacities.  A suit against a local official in his official capacity is tantamount to a suit against the municipality. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985), (holding that official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent,'" quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-94 n. 55 (1978)).

Kelsey Street, respectively, and (2) threatened Peruta with arrest if he did not leave the scene. (Compl. ¶¶ 39-61, 82-101.) Pending before the court are defendants' motion for protective order (doc. #80) and the City of Hartford's motion to quash subpoena and for a protective order (doc. #93).[2] For the reasons that follow, the motions are DENIED.

I. Background

According to the complaint, Peruta owns and operates American News, "a news and information company . . . that operates throughout the United States, and which gathers and provides raw, breaking news video, photographs, and news tips to various mainstream media outlets." (Compl. ¶ 10.) American News broadcasts two regular programs: (i) "The Morning Report," broadcasted from 7:00 to 7:30 a.m., Monday through Thursday and (ii) "Summary Judgment," broadcasted from 4:00 to 6:00 p.m. on Saturdays. (Doc. #80-1, Peruta Dep. at 5.) These programs are broadcasted live on American News' website, YouTube, and the Facebook pages of both American News and Peruta. (Id. at 5-7.) The programs also are recorded and then distributed in Connecticut for broadcast to local television stations, Cable 5 in Torrington, and Charter Communications in Winsted. (Id.) Plaintiffs' counsel, Attorney Rachel Baird, is a "founding

---

[2] U.S. District Judge Robert N. Chatigny referred the pending motions to me. (Doc. ##71 and 94.)

2

sponsor" of American News and co-hosts both news programs with Peruta in a studio in her office building. (Id. and Doc. #80-2.)

II. Motion for Protective Order (Doc. #80)

Defendants Brian J. Foley, Michael Coates, Brandon J. O'Brien and Sean Spell, along with four non-party witnesses,[3] filed the instant motion seeking a protective order (1) prohibiting plaintiffs and their counsel from disclosing, publishing or disseminating information obtained through discovery; and (2) ordering plaintiffs to remove already-published information from any website under their control. (Doc. #80 at 1.) As a separate matter, anticipating that plaintiffs will seek discovery concerning certain events that occurred on June 4, 2016 on Flatbush Avenue in Hartford, defendants are seeking an order preventing such discovery. (Id.)

In support of their motion, defendants contend that Peruta and his attorney have discussed the litigation and disclosed information obtained through discovery on American News' internet broadcasts. It appears undisputed that they have read portions of Peruta's deposition transcript on air and published at least one of the defendant's written discovery responses on plaintiffs' and counsel's website. (Doc. #80 at 9.) In addition, defendants maintain that plaintiffs and their counsel

---

[3] The non-party witnesses are Stephen Barone, Kenneth Medina, Vincent Marfella and Sean Michel. (Doc. #80 at 1.)

3

have made "disparaging assertions against the character of defendants . . . and defense counsel" during their internet news broadcasts. (Id.)

    A. Rule 26(c) Standard

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c)(1). Rule 26(c) "is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so . . . ." Bridge C.A.T. Scan Assocs. v. Technicare Corp., 710 F.2d 940, 944–45 (2d Cir. 1983). Rather, the "court may issue a protective order only after the moving party demonstrates that 'good cause' exists for the protection of the material." Burgess v. Town of Wallingford, No. 3:11cv1129 (CSH), 2012 WL 4344194, at *6 (D. Conn. Sept. 21, 2012).

"Good cause is established by demonstrating a clearly defined and serious injury resulting from disclosure. . . . Broad allegations of harm will not establish good cause, rather to establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Hansen v. U.S. Airports Air Cargo, LLC, No. 3:07cv353 (JCH)(HBF), 2008 WL 4426909, at *1 (D. Conn. Sept. 26, 2008). See, e.g., In re Terrorist Attacks on Sept. 11, 2001, 454 F.Supp.2d 220, 222

4

(S.D.N.Y. 2006)(holding that a party establishes "good cause" by showing that a "clearly defined, specific and serious injury" will occur in the absence of a protective order); Burgess v. Town of Wallingford, 2012 WL 4344194, at *6 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."); Uniroyal Chemical Co. Inc. v. Syngenta Crop Protection, 224 F.R.D.53, 56 (D. Conn. 2004)(same). The court has "broad discretion" to "decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). "The mere fact that some level of discomfort, or even embarrassment, may result from the dissemination of [defendant's] deposition testimony is not in and of itself sufficient to establish good cause to support the issuance of [a] protective order." Flaherty v. Seroussi, 209 F.R.D. 295, 299 (N.D.N.Y. 2001).

"If the moving party meets its burden of establishing good cause for a protective order, the court may balance any countervailing interests in determining whether to exercise its discretion to grant the order." DaCosta v. City of Danbury, 298 F.R.D. 37, 38-39 (D. Conn. 2014)(citing Burgess, 2012 WL 4344194, at *6.)) "Such countervailing interests might include whether the order will prevent the threatened harm, whether there are less restrictive means of preventing the threatened

5

harm, the interests of the party opposing the motion, and the interests of the public." Id. at 39 (citations omitted).

B. Discussion

Defendants argue that a protective order is appropriate because plaintiffs' use of discovery materials is intended to annoy, harass, and embarrass defendants and has the risk of tainting the jury pool. (Doc. #80 at 20.) Plaintiffs respond that defendants have not shown the good cause required to grant a protective order and that a protective order would unduly hamper the public's access to materials bearing on matters of public concern.

Generally speaking, dissemination of pretrial discovery materials by the receiving party is not prohibited absent a protective order. See Burgess, 2012 WL 4344194, at *9 n.17 ("Absent a protective order, the discovery rules place no [specific] limitations on what a party may do with materials obtained during discovery . . . .") (citation and internal quotation marks omitted). "Nonetheless, dissemination for non-judicial purposes is unusual and rightly so. The discovery rules are 'a matter of legislative grace.'" DaCosta v. City of Danbury, 298 F.R.D. at 39 (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32 (1984)). "They compel parties to divulge information 'for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated

6

disputes.'" Id. (quoting Seattle Times Co. v. Rhinehart, 467 U.S. at 34).

The liberality of this process creates "a significant potential for abuse" such as delay, expense, misuse of court process, and damage to the reputation and privacy of litigants and third parties. Id. at 34-35. Courts therefore must be mindful that the purpose of discovery is "to facilitate orderly preparation for trial, not to educate or titillate the public." Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982). Although the details underlying a particular litigation might hold some interest for many members of the public:

> [V]irtually all [members of the public] have an interest in ensuring that everyone in our society ha[s] access to a fair and impartial judicial system without having to pay too high a price of admission in the form of the surrender of personal privacy. Thus, courts must be vigilant to ensure that their processes are not used improperly for purposes unrelated to their role.

Paisley Park Enterprises v. Uptown Prods., 54 F.Supp.2d 347, 349 (S.D.N.Y. 1999). That said, "[i]n cases where issues of strong public interest favoring the free dissemination of discovery materials are at play, the normal practice of not according discovery materials the same degree of access as those filed in connection with trial gives way to a presumption of open inspection." Flaherty v. Seroussi, 209 F.R.D. 295, 299 (N.D.N.Y. 2001). With these principles in mind, I turn to defendants' specific arguments.

7

### 1. Annoyance, Embarrassment, or Harassment

Defendants first argue that plaintiffs' dissemination and discussion of materials obtained through discovery is designed to annoy, embarrass, and harass defendants.

"Case precedent suggests that even when a party admittedly seeks to publicly embarrass his opponent, no protection should issue absent evidence of 'substantial embarrassment' or harm." DaCosta v. City of Danbury, 298 F.R.D. at 40 (citations omitted); Charter Practices Internat'l v. Robb, No. 3:12cv1768 (RNC)(DFM), 2015 WL 1268295 at *4 (D. Conn. Mar. 19, 2015)(same); Burgess, 2012 WL 4344194, at *11-12 (holding same, and declining to prohibit disclosure of deposition transcript where no showing of harm such as misuse of information for financial or commercial gain, violation of deponent's constitutional rights, or disclosure of trade secrets that would cause clearly defined and very serious injury). "Good cause is not established merely by the prospect of negative publicity." Dep't of Econ. Dev. v. Arthur Andersen & Co., 924 F. Supp. 449, 487 (S.D.N.Y. 1996); see, e.g., Flaherty, 209 F.R.D. at 298-300. In Flaherty, the district court denied the defendant Mayor's motion for protective order despite imminent public dissemination of discovery materials based upon plaintiff's counsel's past statements (i) that he "relish[es] the opportunity to question [the Mayor and is] . . . going to

concentrate [his] efforts on knocking [the Mayor]'s teeth down his throat"; and (ii) that he was adamant about his "intention to publicize the Mayor's deposition, championing 'the rights of the citizens.'" Id. at 298. The court held that there is a strong public policy interest in free access to discovery documents where litigation involves "elected officials and the performance of their governmental responsibilities." Id. at 300.

Defendants make only general allegations of harm that might result from plaintiffs' dissemination of discovery materials. They argue that depositions are private proceedings, that such privacy would be defeated by publication, and that disclosure of such information to the public is intended to "harass, intimidate and embarrass" the defendants. (Doc. #80 at 14-22.) Even assuming for the sake of argument that such allegations were true, defendants have not met their burden of showing that dissemination of information in this case will result in a "clearly defined and serious injury." Burgess, 2012 WL 4344194, at *12. Mere embarrassment and annoyance are insufficient. See Dep't of Econ. Dev. v. Arthur Andersen & Co., 924 F. Supp. at 487 (S.D.N.Y. 1996); Flaherty, 209 F.R.D. at 298-300; DaCosta v.

City of Danbury, 298 F.R.D. at 40. A protective order is not warranted on these grounds.[4]

###### 2. Jury Contamination

Defendants next argue that plaintiffs' publication of discovery information on the internet risks biasing the jury pool and defendants' right to a fair trial.

Defendants make only a general argument concerning the risk of jury contamination. As the movants on a motion for protective order, defendants have the burden "to cite specific examples or articulated reasoning in support of his order of protection." Condit v. Dunne, 225 F.R.D. 113, 116 (S.D.N.Y. 2004) (internal quotation marks omitted). They have failed to do so.

Even assuming arguendo that potential jurors could be tainted by obtaining discovery materials through plaintiffs' websites or news broadcasts, voir dire of potential jurors is a less restrictive means than the proposed protective order to

---

[4] Defendants' argument that Local Rule 30 prohibits disclosure of discovery materials is also not persuasive. Local Rule 30 by its terms does not purport to prohibit public dissemination of deposition transcripts, nor have defendants offered any case law so stating. (See D.Conn.L.Civ.R. 30.) Moreover, Connecticut district courts have allowed the public dissemination of deposition transcripts after 2003, when Local Rule 30 was adopted. See, e.g., Burgess v. Town of Wallingford, No. 3:11CV1129 (CSH), 2012 WL 4344194, at *13 (D. Conn. Sep. 21, 2012); DaCosta v. City of Danbury, 298 F.R.D. 37, 38-39 (D. Conn. 2014).

10

ensure an impartial jury pool. See United States v. Graham, 257 F.3d 143, 154 (2d Cir. 2001) (noting that "alternative remedies" other than barring release of pretrial documents "exist to ensure that the defendants receive a fair trial, [including] a more searching voir dire"); Application of Dow Jones & Co., 842 F.2d 603, 611 (2d Cir. 1988) (noting the availability of various means, including "searching voir dire, emphatic jury instructions, and sequestration of jurors" as ways "to mitigate . . . prejudicial publicity"); see also In re Gen. Motors LLC Ignition Switch Litig., No. 14-MC-2543 (JMF), 2015 WL 4522778, at *5 (S.D.N.Y. July 24, 2015) ("[C]ourts have frequently recognized that searching voir dire of potential jurors can provide an adequate means of ensuring an impartial jury pool, even in the face of potentially damaging releases or press coverage."); Condit, 225 F.R.D. at 118 (finding that "publicity is unlikely to color incurably jurors' views, even in the most high-profile cases . . . memories fade and, moreover, . . . any tainting of the jury pool can be remedied through voir dire."). Defendants have provided no evidence that pretrial publicity has been prejudicial or that any action contemplated in the future will compromise defendants' right to a fair trial. Voir dire is available to ensure an impartial jury. Defendants have not shown that a protective order is warranted to prevent the potential risk of tainting the jury pool.

### 3. Inquiry into Flatbush Avenue Incident

Defendants also seek a protective order concerning plaintiffs' inquiry into an incident not alleged in the complaint - the events of June 4, 2016 on Flatbush Avenue in Hartford ("Flatbush Avenue incident"). Defendants argue that the Flatbush Avenue incident is not relevant because it occurred after the complaint was filed, "ten months after the Kelsey Street incident and is a wholly unrelated case." (Doc. #80 at 21.) Plaintiffs respond that the Flatbush Avenue incident is relevant in their attempt to show the defendants' intent and/or a pattern of disregard for civil rights. (Doc. #82 at 14-16.)

The complaint alleges that defendants violated plaintiffs' rights on September 12, 2014 and August 7, 2015 by preventing plaintiffs from "videotaping and photographing police officers in public." (Compl. ¶ 101.) Although the complaint does not encompass the June 2016 Flatbush Avenue incident, plaintiffs do allege that the Hartford Police Department ("HPD") has various "policies, customs and practices," regarding the news media that prevent plaintiffs from "gathering, recording, and distributing information of public interest," which are violative of the Constitution.[5] (Compl. ¶ 101.) Plaintiffs' counsel represented at

---

[5] See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)(holding that the government as an entity is

12

oral argument that she intends to make limited inquiry into the Flatbush Avenue incident to probe evidence regarding these policies and practices.  Defendants have not met their burden of showing a protective order is warranted with regard to the Flatbush Avenue incident.  For these reasons, defendants' motion for protective order (doc. #80) is DENIED.

   III. <u>Motion to Quash Subpoena & for Protective Order (Doc. #93)</u>

The second motion pending before the court is the City's motion to quash plaintiffs' subpoena of retired Hartford Corporation Counsel, Saundra Kee Borges ("Borges"), and for a protective order precluding plaintiffs from taking her deposition.  (Doc. #93.) The City argues that the subpoena is harassing, vexing, annoying, unduly burdensome, and not necessary or proportional to plaintiffs' claims.  The City also asserts that Borges' testimony is irrelevant and protected by the attorney-client privilege.  (Doc. #93 at 3.)  The following background is necessary to resolve the City's motion.

The City of Hartford has an ordinance which establishes the Hartford Civilian Police Review Board (the "civilian review board"). (See Hartford City Code, Ch. 2, Art. V, Div. 5, § 2-196(a), Doc. #97, Ex. 1.) The purpose of the civilian review

---

responsible under § 1983 when execution of a government's policy or custom inflicts the injury).

13

board is to "hear public complaints against members of the Hartford Police Department." (Id.) In accordance with the ordinance, the civilian review board:

> shall have the authority to investigate allegations through independent investigators, of police misconduct, to review reports and conclusions of the Hartford Police Department's Internal Affairs Division to determine that they are complete, accurate and factually supported, to make recommendations to the police chief and to the mayor in connection therewith.

(Id.)

Plaintiffs filed a complaint with the civilian review board alleging that on September 12, 2014, Hartford police officers prevented Peruta from filming a crime scene. As discussed above, this alleged conduct, together with similar allegations about a subsequent incident on August 7, 2015, form the basis of this lawsuit. (Compl. ¶¶ 39-61, 82-100.)

Consistent with long-standing policy, the Corporation Counsel advised the civilian review board to "table" plaintiffs' complaint during the pendency of this lawsuit. (Doc. #97 at 2-4.)[6] There are no allegations in this lawsuit concerning the

---

[6] The City does not contest that the Office of Corporation Counsel wrote an interdepartmental memorandum dated September 14, 2005, (9 years before plaintiffs filed a complaint with the civilian review board on September 15, 2014) stating, in relevant part, that complaints filed by citizens who also have civil or criminal cases pending for the same allegations "should not be heard until such time as the civil or criminal matter has been resolved." (Doc. #97, Ex. 4.) An Assistant Corporation Counsel confirmed this opinion in a March 20, 2012 letter

civilian review board. Plaintiffs, however, seek to depose former Corporation Counsel Borges to explore the issue of whether the Corporation Counsel interfered with the handling of their complaint pending before the civilian review board. (Id. at 7.)

    A. Standing

Although neither party raised the issue in its briefs or at oral argument, as an initial matter the Court must determine whether the City has standing to move to quash a subpoena directed to a former employee who is not a party to the lawsuit. Ms. Borges retired from her position as Hartford Corporation Counsel on January 30, 2015, after one of the events that is the subject of this lawsuit occurred, but before the lawsuit was filed. (Doc. #97 at 4 n. 3.)

> Ordinarily, a party does not have standing to move to quash a subpoena served on a third party. Rather, only the person or entity to whom a subpoena is directed has standing to file a motion to quash. . . The exception to this general rule is if a party seeks to enforce a claim of privilege or personal right. . . . The claim of privilege or right must be personal to the movant, not to the non-party witness on whom the subpoena was served. . . .

---

addressed to the Chairperson of the Civilian Police Review Board: "[I]t is the conclusion of this Office that the Board must stay or postpone its review of police investigations into civilian complaints, during the time in which the citizen has litigation pending against the City and/or its police officers. Once the litigation has concluded, the Board may conduct or recommence as the case may be, its review of investigations into such complaints." (Doc. #97, Ex. 6.)

15

> Thus, a party lacks standing to challenge
> subpoenas issued to non-parties on the grounds
> of relevancy or undue burden. . . .

<u>Dominion Resources Services, Inc. v. Alstom Power, Inc.</u>, No. 3:16CV00544(JCH)(SALM), 2017 WL 3575892, at *3 (D. Conn. Aug. 18, 2017)(quotation marks and internal citations omitted). Therefore, the defendant may challenge the subpoena served on a former employee, a third party, only to assert claims of privilege. Defendant may not seek to quash the subpoena on the bases of relevancy or burden. (<u>Id.</u>)

    B. <u>Privilege</u>

The City's concern about a possible breach of attorney-client or work product privilege is not sufficient to warrant precluding Borges' deposition in its entirety. "An order precluding the deposition of a witness is of course the exception rather than the rule in federal court." <u>Martin v. Valley Nat. Bank of Ariz.</u>, 140 F.R.D. 291, 314 (S.D.N.Y. 1991); <u>see</u> <u>Inv. Properties Int'l, Ltd. v. IOS, Ltd.</u>, 459 F.2d 705, 708 (2d Cir. 1972) ("[A]n order to vacate a notice of taking [of a deposition] is generally regarded as both unusual and unfavorable."); <u>Naftchi v. N.Y. Univ. Med. Ctr.</u>, 172 F.R.D. 130, 132 (S.D.N.Y. 1997) ("[I]t is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition.").

"[T]he need for protection [in a deposition] usually cannot be determined before the examination begins, and a motion can be made if any need for protection emerges during the course of the examination." 8A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2037 (3d ed. 2017).

> [T]he normal practice is to allow a deposition to go forward and have the parties complete as much of it as possible before reaching an impasse. In that way, the parties create a record of where questionable inquiries, objections[7] or assertions of privilege arose and furnish a context for the disputes when a party makes a motion to resolve the dispute (either to compel answers or to enforce privileges and objections). Based upon a concrete record, the court facing that later motion then can determine whether a particular line of questions should or should not be answered or whether an objection or privilege has merit.

<u>Ceslik v. Miller Ford, Inc.</u>, No. 3:04CV2045 (AWT), 2007 WL 1794097, at *1–3 (D. Conn. June 19, 2007).

"The benefit of this approach of first attempting to conduct the deposition then seeking judicial intervention on particular matters is that there is a fleshed out record that focuses the court's inquiry on whether a particular question is or is not privileged." <u>Pritchard v. Cnty. of Erie</u>, No. 04CV534C, 2006 WL 2927852, at *5 (W.D.N.Y. Oct. 12, 2006). The City has not demonstrated that a protective order to prevent a potential breach of privilege is warranted at this time. Any

---

[7] Fed.R.Civ.P. 30(c)(2) provides that a person may instruct a deponent not to answer when necessary to preserve privilege.

claims of privilege with respect to specific questions or areas of inquiry can be preserved on the record and addressed with the court at a later date if necessary.

The City's motion to quash and for a protective order (doc. #93) is DENIED.

IV. <u>Conclusion</u>

For these reasons, defendants' motion for protective order (doc. #80) is DENIED; and defendant's motion to quash subpoena and for protective order (doc. #93) is DENIED.

SO ORDERED at Hartford, Connecticut this 30th day of August, 2017.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge